```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------X
                                   :
LEILA JENKINS,                     :    11 Cr. 633 (WHP)
                                   :
                Petitioner,        :    13 Cv. 195 (WHP)
                                   :
        -against-                  :    MEMORANDUM & ORDER
                                   :
UNITED STATES OF AMERICA,          :
                                   :
                Respondent.        :
                                   :
-----------------------------------X
```

WILLIAM H. PAULEY III, District Judge:

  Petitioner pro se Leila Jenkins moves to vacate, set aside, or correct her sentence pursuant to 28 U.S.C. § 2255. Jenkins claims (1) her guilty plea was not voluntary, (2) newly discovered evidence demonstrates her innocence, (3) the government failed to disclose exculpatory evidence, and (4) her counsel was ineffective. For the following reasons, Jenkins's motion seeking habeas relief is denied.

## BACKGROUND

  On November 9, 2011, Jenkins pled guilty to passport fraud in violation of 18 U.S.C. § 1542. At that time, she allocuted as follows: "In November 2009, I submitted an application for a U.S. passport. That application included some false identification information. I know I shouldn't have submitted it, and I'm very sorry and remorseful that I did, and I would like to take full total and complete responsibility for that action." (Tr. of Plea Allocution, dated Nov. 9, 2011 ("Plea Tr."), at 10.) Prior to her allocution, Magistrate Judge Francis advised Jenkins that if she pled to making false statements in connection with a passport application, she

would be subject to a term of imprisonment of up to ten years and a maximum term of three years of supervised release. (Plea Tr. at 4.)

During the plea proceedings, the Government described the elements of a violation of 18 U.S.C. § 1542: "[T]he first element is that the defendant made a false statement in an application for a United States passport. The second element is that the defendant made that statement intending to get a U.S. passport for her own use. And, third, that the defendant acted knowingly and willfully." (Plea Tr. at 9–10.) In a colloquy with Magistrate Judge Francis, Jenkins acknowledged her understanding that the Government would have to prove each of those elements beyond a reasonable doubt in order to convict her. (Plea Tr. at 9–10.)

Following her plea, this Court expedited Jenkins's sentencing. At sentencing on January 4, 2012, this Court adopted without objection the findings of the Presentence Investigation Report that Jenkins had falsely stated on a passport application that the Government had never issued a passport to her, and that she had submitted a false Social Security number, a forged Social Security card, a false permanent address, and a forged birth certificate. (PSR ¶ 2.) This Court determined that the appropriate Guidelines range was six to twelve months' imprisonment. (Tr. of Sentencing Hr'g, dated Jan. 4, 2012 ("Sentencing Tr.") at 11.) Jenkins addressed the Court and reaffirmed her responsibility for her actions: "I continue to take full responsibility for what I've done. . . . For me to be in this position today of being guilty of a crime from the State Department is a horrible place for me to be. . . . I have so much remorse." (Sentencing Tr. at 10–11).

This Court sentenced Jenkins to time served—approximately 4.5 months' imprisonment—plus three years of supervised release, a non-Guidelines sentence. (Sentencing

Tr. at 15.) Jenkins did not appeal.

Because Jenkins is proceeding pro se, this Court has an obligation to "read [her] supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest." Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994).

## DISCUSSION

"A motion under § 2255 is not a substitute for an appeal." Rosario v. United States, 164 F.3d 729, 732 (2d Cir. 1998) (internal quotation marks omitted). It is a "collateral attack on a final judgment[,]" and relief is therefore only available when there has been "a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes a fundamental defect which inherently results in complete miscarriage of justice." Graziano v. United States, 83 F.3d 587, 589–90 (2d Cir. 1996) (internal quotation marks omitted). "[C]laims that could have been brought on direct appeal [cannot] be[ ] raised on collateral review absent cause and prejudice." Yick Man Mui v. United States, 614 F.3d 50, 54 (2d Cir. 2010); see also Rosario, 164 F.3d at 732 ("Where a criminal defendant has procedurally forfeited [her] claim by failing to raise it on direct review, the claim may be raised in a § 2255 motion only if the defendant can demonstrate either: (1) cause for failing to raise the issue, and prejudice resulting therefrom, or actual innocence." (internal citations and quotation marks omitted)). Moreover, cause is not just any logical explanation for failure but "something external to the petitioner." Coleman v. Thompson, 501 U.S. 722, 753 (1991).

I.   Involuntariness of Jenkins's Plea

Jenkins argues that her plea was "not made voluntarily" because she was not informed that she would not be allowed to travel outside the United States during her three-year

term of supervised release or that she would lose her right to vote. She also claims that she only admitted to submitting a passport with false information, not that she knew the information was false. (Jenkins § 2255 Pet., dated Jan. 7, 2013, ECF No. 1 ("Jenkins Pet.") at 5, 9–10.) These arguments lack merit.

"A guilty plea is constitutionally valid if it 'represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" Panuccio v. Kelly, 927 F.2d 106, 109 (2d Cir. 1991) (quoting North Carolina v. Alford, 400 U.S. 25, 31 (1970)). To meet this standard, a defendant must receive "real notice of the true nature of the charge against [her]," including any mens rea requirements. Henderson v. Morgan, 426 U.S. 637, 645–47 (1976). However, an "accused need not be informed prior to the acceptance of [her] guilty plea about every conceivable collateral effect the conviction entered on the plea might have." Bye v. United States, 435 F.2d 177, 179 (2d Cir. 1970). In particular, a plea will not be invalidated merely because the Government did not warn the accused that conviction could result in the loss of the right to travel abroad, Meaton v. United States, 328 F.2d 379, 380 (5th Cir. 1964), or the right to vote, cf United States v. U.S. Currency in the Amount of $228,536.00, 895 F.2d 908, 915 (2d Cir. 1990) (reiterating that certain consequences of conviction are "collateral" and need not be explained to an accused in order for a plea to be voluntary), Trueblood v. Davis, 301 F.3d 784, 786 (7th Cir. 2002) (describing the loss of the right to vote as a collateral consequence of criminal conviction), Appleby v. Warden, Northern Regional Jail & Correctional Facility, 595 F.3d 532, 542 (4th Cir. 2010) (stating that due process does "not necessarily" require the defendant to be advised of the loss of the right to vote), United States v. Miss Smart Frocks, Inc., 279 F. Supp. 295, 299–300 (S.D.N.Y. 1968) ("[Disenfranchisement] is another collateral

consequence, ignorance of which does not affect the voluntary character of a plea of guilty.").

Before she pled, Jenkins received full notice of the charge against her, the elements of the crime, and the direct consequences of a guilty plea. She nonetheless swore that her guilty plea was voluntary and made of her own free will:

| | |
|---|---|
| The Court: | Is your plea voluntary and made of your own free will? |
| The Defendant: | Yes, your Honor. |
| The Court: | Did you commit the offense charged? |
| The Defendant: | Yes, your Honor. |

(Plea Tr. at 10.) These "[s]olemn declarations in open court carry a strong presumption of verity." Blackledge v. Allison, 431 U.S. 63, 74 (1977). Jenkins provides no reason that presumption should not apply here.

II.   Jenkins's Newly Discovered Evidence Claim

Jenkins argues that her conviction should be set aside because newly-discovered evidence demonstrates her innocence. Specifically, Jenkins alleges that Derrick Webster, her former business and romantic partner, forged documents and falsified information in her passport application. (Letter From Leila Jenkins to Judge William H. Pauley, dated June 10, 2013, ECF No. 7 ("June 10 Letter") at 2.) Jenkins rests her claim on her purportedly recent discovery of an electronic copy of her altered birth certificate in the backup data of a computer used (at some point) by Webster and an allegedly unauthorized charge on her credit card in 2011. (Jenkins Decl. at 13.)

A habeas motion based on newly discovered evidence "will not be granted unless the newly discovered evidence could not with due diligence have been discovered before or

during trial." United States v. White, 972 F.2d 16, 20 (2d Cir. 1992) (internal quotation marks and citations omitted). Courts are especially reluctant to overturn a conviction based on new evidence when the conviction stemmed from a guilty plea. See Blackledge, 431 U.S. at 74 ("[T]he representations of the defendant . . . [at a plea hearing], as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings."). Moreover, the Supreme Court made clear in Blackledge that "[t]he subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." 431 U.S. at 74.

Jenkins's new evidence cannot overcome the formidable barrier raised by her plea allocution. First, the backup data Jenkins cites as new evidence originated in September 2009—well before Jenkins's plea. (See Jenkins Decl. at 13.) Jenkins was never denied an opportunity to review computer records or obtain independent forensic analysis. Prior to her plea, the Government provided Jenkins with Rule 16 discovery, which included drafts of doctored birth certificates that had been retrieved from her computer.

Jenkins's accusation that Webster was responsible for the fraudulent passport submission is wholly incredible. Her conclusory fraud claim against Webster does not approach the specific evidence required by Blackledge.

III.   The Government's Alleged Failure to Disclose Exculpatory Evidence

Jenkins's third ground for setting aside her conviction is that the Government failed to disclose potentially exculpatory evidence. (Jenkins Pet. 14.) It is not clear precisely what evidence Jenkins believes the Government did not disclose. In her petition, Jenkins asserted that it is "unknown if the prosecution had any of the evidence favorable to the

Defendant that now has been discovered by the Defendant in 2012." (Jenkins Pet. 14.) In subsequent submissions, Jenkins suggests the Government "had the exculpatory evidence since March 2010" (June 10 Letter at 1.) Jenkins appears to refer either to the backup computer data or, more generally, to records of the Government's searches of Jenkins's computers. (See June 10 Letter at 1–3.)

The Government has a constitutional duty to disclose favorable evidence to the accused where such evidence is material either to guilt or punishment. United States v. Coppa, 267 F.3d 132, 139 (2d Cir. 2001) (citing Brady v. Maryland, 373 U.S. 83, 87 (1963)). "Evidence is material in the Brady context only if its suppression undermines confidence in the outcome of the trial." Coppa, 267 F.3d at 141 (internal quotation marks and citations omitted).

Jenkins's claim that the Government withheld exculpatory evidence is meritless. The Government provided Jenkins with copies of the forged birth certificate found on her computer. There is "no constitutional requirement that the prosecution make a . . . detailed accounting to the defense of all police investigatory work on a case." Moore v. Illinois, 408 U.S. 786, 795 (1972).

IV.  Ineffective Assistance of Counsel

Finally, Jenkins argues her conviction should be set aside because she received ineffective assistance of counsel. (Jenkins Pet. 5–6.) Jenkins complains that her lawyer for bail purposes[1] was selected by the perpetrator of a fraud against her. Then, Jenkins launches a barrage of entirely conclusory and outrageous accusations against her Criminal Justice Act appointed counsel. Those conclusory allegations can be summarized as failing to deliver critical

---

[1] (See Def. Jenkins Mot. for Substitution Counsel, dated Aug. 19, 2011, ECF No. 6, United States v. Jenkins, No. 11 Cr. 633 (WHP) at 1.)

evidence to Jenkins before her plea and providing misleading information about the law. (See Jenkins Pet. 5–6.)

To establish a claim of ineffective assistance of counsel, Jenkins must "(1) demonstrate that [her] counsel's performance fell below an objective standard of reasonableness in light of prevailing professional norms, and (2) affirmatively prove prejudice arising from counsel's allegedly deficient representation." United States v. Cohen, 427 F.3d 164, 168 (2d Cir. 2005) (quoting Strickland v. Washington, 466 U.S. 668, 687, 694 (1984) (internal citations omitted)). The first prong of the Strickland test requires a showing that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687. The second prong requires a showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694.

The Supreme Court has established that "a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." Strickland, 466 U.S. at 697. When a petitioner claims her counsel misled her "as to the possible sentence which might result from [her] plea," she cannot overcome Strickland's prejudice prong if she was made aware of "the actual sentencing possibilities" and pled anyway. Ventura v. Meachum, 957 F.2d 1048, 1058 (2d Cir. 1992). And when "the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, the determination whether the error 'prejudiced' the defendant by causing [her] to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence

would have led counsel to change his recommendation as to the plea." Hill v. Lockhart, 474 U.S. 52, 59 (1985).

The standard for ineffective assistance of counsel is strict and courts must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . [that] might be considered sound trial strategy." Strickland, 466 U.S. at 689. A petitioner seeking vacatur of her guilty plea bears the burden of demonstrating that there is "a reasonable probability that, but for counsel's errors, [s]he would not have pleaded guilty and would have insisted on going to trial." Premo v. Moore, 131 S. Ct. 733, 745 (2011) (internal quotation marks omitted). This inquiry requires a fact-specific analysis that evaluates the weight of the evidence, the consequences of various legal options, and any circumstances that may affect a decision to plea. See Premo, 131 S. Ct. at 744.

Here, none of Jenkins's objections hints at any prejudice. First, the fact that her lawyer for bail purposes was selected and paid by a man whom she now believes to have committed fraud against her has no bearing on either her plea decision or the effectiveness of her counsel at the pleading stage, when she had court-appointed representation. Second, counsel's alleged failure to uncover the details of the Government's computer searches cannot have prejudiced Jenkins because she and her counsel received copies of the doctored birth certificates from the Government. This Court cannot credit Jenkins's claim that she would not have pled guilty if counsel had told her the Government had evidence from her computers. That claim, like her earlier explanations about how her electronic monitoring bracelet came to be severed during a blackout, is absurd and totally unworthy of belief. And it also resembles her spurious claim

that she did not know that the false statements in her own handwriting on the passport application were false.

Finally, it bears reiterating that irrespective of what her CJA-appointed counsel told her, Magistrate Judge Francis alerted Jenkins independently to the actual sentencing possibilities, see supra Part II, and she pled nevertheless.

In view of the circumstances, Jenkins fails to establish that but for counsel's errors, she would have insisted on going to trial. As such, this Court need not consider whether Jenkins's counsel's performance fell below an objective standard of reasonableness. When "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." Strickland, 466 U.S. at 697.

V.   Evidentiary Hearing

Section 2255 "requires the district court to hold a hearing '[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief.'" Chang v. United States, 250 F.3d 79, 85 (2d Cir. 2001) (quoting 28 U.S.C. § 2255(b)). "[A] district court has discretion to determine if a testimonial hearing will be conducted." Campusano v. United States, 442 F.3d 770, 776 (2d Cir. 2006) (citing Chang, 250 F.3d at 85). And a district court may decline to hold such a hearing where a petitioner does not "demonstrate a colorable claim [for relief]." Contino v. United States, 535 F.3d 124, 128 (2d Cir. 2008) (per curiam). Because Jenkins has not demonstrated a colorable claim for relief under any of her theories, this Court declines to conduct a hearing.

CONCLUSION

For the foregoing reasons, Jenkins's motion to vacate, set aside, or correct her sentence is denied. Because Jenkins has not made a substantial showing of the denial of a constitutional right, a certificate of appealability will not be issued. See 28 U.S.C. § 2253(c). In addition, this Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith. See Coppedge v. United States, 369 U.S. 438 (1962). The Clerk of the Court is directed to terminate all pending motions and mark this case closed.

Dated: December 31, 2013
      New York, New York

SO ORDERED:

_____
WILLIAM H. PAULEY III
U.S.D.J.

*Copies to:*

Leila Jenkins
2600 N Flagler Dr. #50
West Palm Beach, FL 33407
*Petitioner/Defendant Pro Se*

Andrew D. Goldstein
United States Attorney Office, SDNY
One Saint Andrew's Plaza
New York, NY 10007
*Counsel for Respondent*